

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| MEB:ADG | *271 Cadman Plaza East* |
| F. #2018R01092 | *Brooklyn, New York 11201* |

August 27, 2021

<u>By ECF</u>

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Osei Montrose
> <u>Criminal Docket No. 18 CR 316 (JMA)</u>

Dear Judge Azrack:

The government respectfully submits this letter in advance of the sentencing of the defendant Osei Montrose, which is scheduled for September 10, 2021 at 1:00 p.m., and in response to the defendant's sentencing submission dated August 25, 2021. (ECF No. 57) ("Def. Mem.")). On December 12, 2019, the defendant pleaded guilty, without a plea agreement, to both counts in a two-count indictment charging the defendant with importing 500 grams or more of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(2)(B)(ii); and possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II). <u>See</u> Presentence Investigation Report, issued June 10, 2021 ("PSR") ¶ 1. For the reasons set forth below, the government respectfully submits that a sentence at the low-end of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 18-24 months in custody is appropriate in this case.[1]

I.      <u>Background</u>

   A.   <u>Offense Conduct</u>

On May 27, 2018, the defendant, a United States citizen, arrived at John F. Kennedy International Airport in Queens, New York aboard a commercial plane coming from Georgetown, Guyana. PSR ¶ 3. During a routine examination, U.S. customs authorities searched the defendant's suitcase. PSR ¶ 3. Although officials did not find contraband in this search, they noticed that the defendant appeared nervous. PSR ¶ 3. Additionally, the defendant

---

[1] As discussed in greater detail below, the government submits that the correct Guidelines range is 18 to 24 months. This range differs from the Probation Department's calculations.

gave inconsistent answers to the officials' questions.  PSR ¶ 3.  Customs authorities gave the defendant an x-ray examination consent form, which he read, indicated he understood and signed.  PSR ¶ 4.  A subsequent exam revealed potential narcotics in the defendant's intestinal tract.  PSR ¶ 4.  Ultimately, the defendant passed through his system approximately 62 pellets containing cocaine, which contained a gross weight of approximately 747.6 grams of cocaine.  PSR ¶ 4.  Federal agents arrested the defendant.  PSR ¶ 4.

The defendant was read his Miranda rights, which he waived.  PSR ¶ 4.  The defendant then stated in sum and substance and in part that he: (1) had made at least four prior trips couriering cocaine into the United States on an acquaintance's behalf; (2) internally smuggled approximately a half-kilogram of cocaine on each of those trips; and (3) received approximately $5,000 for each trip.  PSR ¶ 5.

B.  Procedural History and Pretrial Violations

On June 22, 2018, a federal grand jury sitting in the Eastern District of New York charged the defendant with one count of importing 500 grams or more of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(2)(B)(ii); and one count of possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II).  (Ind., ECF No. 7).

On July 25, 2018, the defendant was released on a $75,000 unsecured bond and into Pretrial Services' Special Options Services ("SOS") Program.  PSR ¶ 2.  Despite the Court's and Pretrial Services' sustained efforts, the defendant repeatedly violated his Pretrial release conditions.  The PSR details the defendant's lengthy history of violations.  See PSR ¶ 2.  In summary, the defendant was arrested three times, lied to Pretrial Services, violated curfew and failed two drug tests.  PSR ¶ 2.

The first arrest occurred on May 1, 2020, when the defendant physically assaulted his girlfriend.  PSR ¶ 2.  He was charged by New York State with strangulation in the second degree, among other crimes.  PSR ¶ 2.  The defendant had previously lied to Pretrial Services regarding his living arraignments, having told them that he was living with his aunt when, in fact, he was living with his girlfriend.  PSR ¶ 2.  On November 26, 2020, the defendant was arrested by the New York City Police Department ("NYPD") for, among other things, assaulting a fellow resident at a boarding house.  PSR ¶ 2.  On March 1, 2021, the NYPD again arrested the defendant, this time for forgery and related crimes.  PSR ¶ 2.

On March 23, 2021, the defendant pled guilty to the two-count indictment against him.  PSR ¶ 1.

II.  Sentencing Guidelines

The government respectfully requests that the Court adopt the following Guidelines calculation:

Base Offense Level (§§ 2d1.1(a)(5) & (c)(8))                                        24

Less:  Safety-valve Relief (§ 2d1.1(b)(18))                                         -2

Less:  Minimal Participant (§ 3B1.2(a))                                          -4

Less:  Acceptance of Responsibility (§ 3E1.1(a)-(b))                             <u>-3</u>

Total Offense Level:                                                             <u>15</u>

Accordingly, the defendant's total offense level is 15.  Further, because the defendant is in Criminal History Category I, his Guidelines range of imprisonment is 18 to 24 months.

The government's proposed Guidelines range is more conservative than the offense level calculated by the Probation Department in the PSR in two ways.  First, the PSR includes the higher base offense level of 26, as opposed to 24, because it includes as relevant conduct narcotics the defendant smuggled into the country on trips prior to the instant offense. PSR ¶ 12.  While the defendant's statements admitting to such conduct should certainly be considered by the Court, the government does not intend to prove by a preponderance of the evidence that the defendant is responsible for importing more than 747.6 grams of cocaine.

Second, the government believes that the defendant, in this case, accepted responsibility for the charged criminal conduct and therefore qualifies for a three-point reduction in acceptance of responsibility under U.S.S.G. § 3E1.1, as outlined in the defendant's sentencing submission.  (See Def. Mem., at 5-6).  The Probation Department believes the defendant should not receive any points for acceptance of responsibility based on his repeated flouting of the Court and Pretrial Services.  While the government believes that the defendant's timely plea should result in a three-point reduction for acceptance of responsibility, the government agrees with the Probation Department that the defendant's repeated arrests and other violations while on Pretrial supervision are concerning.  Accordingly, as discussed below, the government believes that a significant custodial sentence is appropriate here.

III.    A Guidelines Sentence Is Appropriate

A. Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).

Title 18, United States Code, § 3553(a) provides that, in imposing a sentence, a court shall consider:

(1)    the nature and circumstances of the offense and the history and

3

characteristics of the defendant;

(2)     the need for the sentence imposed—

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; [and]

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

B.  Section 3553(a) Factors

The government respectfully submits that a sentence at the low-end of the government's calculated Guidelines range of 18 to 24 months' custody would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

The "nature and circumstances of the offense," that is, the importation into the United States and intended distribution of cocaine is serious. 18 U.S.C. § 3553(a). The defendant was not simply selling small amounts of cocaine, but rather brought nearly one kilogram of narcotics into the country. Additionally, as the defendant admitted to law enforcement officials, this was at least his fifth time engaging in this criminal activity. In fact, by his own admission, the defendant's prior successful trips brought approximately two kilograms of cocaine into the United States.

Furthermore, the "history and characteristics of the defendant" similarly weigh towards a significant custodial sentence. Id. As discussed above, despite repeated efforts by this Court and Pretrial Services, the defendant has squandered the opportunities given to him. Even if the defendant is not ultimately convicted of his various New York State charges, the defendant was, at the very least, clearly in situations he should not have been in and in repeated violation of his bail conditions. Furthermore, the government takes dishonesty to Pretrial Services seriously. While a defendant on supervision might sometimes err, it is unacceptable to deliberately mislead an arm of the Court.

4

Additionally, both general and specific deterrence militate in favor of a significant custodial sentence here. 18 U.S.C. § 3553(a)(2)(B). The defendant argues that narcotics transporters like him should not be punished to the same degree as those who organize the illegal narcotics schemes. (See Def. Mem., at 8). While the government agrees generally with that principle, the government believes that narcotics importers should expect to receive prison terms if they are caught, even if they did not mastermind the illegal activity. Further, the defendant is not the average narcotics importer—this was his fifth narcotics importation. The defendant further argues that his chance at recidivism is low because the length of prison time for drug traffickers purportedly does not correspond to the likelihood of repeating the offense. (See Def. Mem., at 8). Regardless of the merits of this general claim, specific deterrence is needed here considering both his five cocaine importation trips and his repeated violations of his release conditions. Indeed, the defendant has not been deterred by frequent reprimands from the Court following his flagrant release violations. The defendant has repeatedly demonstrated that Court supervision alone will not prevent his participation in criminal conduct.

Finally, the government's recommendation accounts for the defendant's claims that he has made some progress in the SOS Program toward becoming a productive member of society, such as securing housing and therapeutic treatment. (See Def. Mem., at 8). While such progress should be considered, it does not justify an 18-month downward variance in this case.

IV.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence at the low-end of the applicable Guidelines range of 18 to 24 months' imprisonment.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:     /s/ Andrew D. Grubin
Andrew D. Grubin
Assistant U.S. Attorney
(718) 254-6322

cc:     Clerk of the Court (JMA) (by ECF and Email)
James Darrow, Esq. (by ECF and Email)
Shayna Bryant, Senior United States Probation Officer (by Email)